BRADLEY, Judge.
The Alabama Department of Mental Health and Mental Retardation (hereinafter Mental Health) filed a petition for a writ of prohibition to be issued to the judge of the Houston County Juvenile Court.
In November 1983 the Houston County Juvenile Court found the minor child in the present case to be mentally ill and a danger to himself and others. The child was committed to the custody of Mental Health and was placed at Bryce Hospital for care and treatment.
After treatment at Bryce Hospital, Mental Health transferred the child to the Eu-faula Adolescent Center in Barbour County. While he was a resident of the Eufaula facility, the child escaped and allegedly committed several delinquent acts in Barbour County.
Petitions were filed with the Barbour County Juvenile Court, alleging that the child was delinquent. In October 1985 the Barbour County Juvenile Court adjudged the minor to be delinquent and committed him to the custody of the Alabama Department of Youth Services (Youth Services). He was to be placed at the Southeast Alabama Diversion Center until he could be transferred to the Diagnostic and Evaluation Center in Montgomery.
On October 11, 1985 the guardian ad litem for the child filed a request for a hearing in Houston County. The grounds for his request were that while in the custody and care of Mental Health the child contracted venereal disease and was allowed to escape. Further, the Barbour County Juvenile Court had modified the prior order of the Houston County Juvenile Court by placing custody of the child in Youth Services.
Also, the boy’s mother had filed a motion in Houston County alleging that Mental Health was not properly caring for or supervising and treating her son.
On October 18, 1985 a hearing was held before Phyllis Logsdon, who was acting as Houston County’s Juvenile Referee. The purpose of this hearing was to determine *179 whether the child could be detained at the Southeast Alabama Diversion Center so his attorney could confer with him on issues not before the court at that time. At this hearing it was determined that the Barbour County order before the Houston County Juvenile Court was invalid on its face as to the child because the original order copied for certification had the name of another juvenile who had been adjudicated as delinquent. On the certified copy before the Houston County Juvenile Court, the name of the other juvenile had been “whited out” and this child’s name had been substituted.
Tim Price of the Juvenile Diversion Center filed a petition with the Houston County Juvenile Court dated October 18, 1985, stating that because the Barbour County order was invalid the child in question did not meet the requirements to be held at the diversion center. The petition further alleged that custody of the boy was in controversy because Mental Health refused to take him.
Larry McKay, the Director of Houston County Juvenile Court Services, was present at the October 18 hearing. McKay contacted Charter Woods Hospital, a private psychiatric hospital in Houston County, to see if it would take the child as an emergency placement for the court. Charter Woods said that it would accept the boy on the condition that he be removed by October 25, 1985.
In an order dated October 18, 1985, the Houston County Juvenile Court ordered the Department of Pensions and Security (DPS) to take the child into protective custody with temporary placement at Charter Woods. Legal custody was to remain in Mental Health pending a final hearing.
On October 25, 1985 there was a hearing before Judge McFatter of the Houston County Juvenile Court. The transcript of this hearing shows that Mental Health was not prepared to present evidence on the question of the alleged abuse, mistreatment, or neglect of the boy while he was in its custody. Therefore, the hearing was limited to the question of where the boy should be placed pending a final hearing.
At the October 25 hearing, Mental Health contended that it no longer had legal custody of the child since Barbour County had given custody to Youth Services. However, Mental Health stated that if the Houston County Juvenile Court ruled it was still legal custodian of the child it was willing to abide by that ruling.
There was an indication that in the week that the child had been at Charter Woods it had begun an evaluation of his condition. It was further indicated that Charter Woods would allow him to remain at its facility if payment were made. Mental Health stated that if an evaluation were ordered by the court it was willing to take the child and perform the evaluation, but there was never any specific place mentioned.
The judge decided that an evaluation was necessary. Because no evidence was presented as to where the child was to be evaluated and who was to be responsible for the cost, the judge made his ruling. In the order dated October 25,1985, the minor was to remain in the legal custody of Mental Health and the physical custody of Charter Woods so that it might complete the evaluation which it had begun. Mental Health was ordered to pick up any expenses incurred. DPS was to exercise protective supervision while the child is in Houston County.
An order dated October 28, 1985 denied Mental Health’s motion to stay. Mental Health had also moved the court to allow the child to be placed at Eufaula pending the outcome. The Eufaula facility had been excluded because of allegations made at a prior hearing. Mental Health was given the opportunity to present alternatives for placement, but declined. The court ordered the child to remain at Charter Woods pending its further order.
On October 29, 1985 Mental Health filed this petition for writ of prohibition, asking that the Houston County Juvenile Court be prohibited from exercising jurisdiction which the Barbour County Juvenile Court had assumed.
Mental Health argues that the Barbour County Juvenile Court had jurisdiction over the child and could adjudicate him to be delinquent and commit him to the custody of Youth Services. Thus, it argues, the *180 commitment to Youth Services by the Barbour County Juvenile Court relieved Mental Health of custody of the child and, therefore, the Houston County Juvenile Court could not issue any further orders to Mental Health concerning the boy.
This court recently addressed the issue of which court, i.e. the Houston County Juvenile Court or the Barbour County Juvenile Court, has jurisdiction over a juvenile in almost identical circumstances to the case at bar in Ex parte Department of Mental Health & Mental Retardation, 491 So.2d 956 (Ala.Civ.App.1986) (hereinafter Ex parte Mental Health). In that case we held that the Barbour County Juvenile Court should have yielded to the prior continuing jurisdiction of the Houston County Juvenile Court and its committal of the juvenile to the custody of Mental Health.
Based on Ex parte Mental Health, supra, we hold that the Barbour County Juvenile Court should have yielded to the continuing jurisdiction of the Houston County Juvenile Court. Consequently, Mental Health is not entitled to a writ of prohibition on the jurisdiction issue.
Respondent also contends that Mental Health’s request for the writ of prohibition should be denied because the petition asking for the issuance of the writ was not verified. Again, this very same issue arose in Ex parte Mental Health and we held that writs of prohibition are governed by Rule 21, Alabama Rules of Appellate Procedure, which does not require the petition for the writ to be verified.
Finally, Mental Health says that the Houston County Juvenile Court had no authority to temporarily place a child who had been previously placed in its custody in a private facility until further order of the court. As authority for this position, Mental Health relies on the case of In the Matter of McCain, 348 So.2d 780 (Ala. 1977). In McCain the juvenile court had assessed as court costs the sum expended to care for a child who had been placed in an Atlanta, Georgia treatment facility. The court’s order had directed that the costs be paid as court costs from a court costs fund appropriated by the legislature. The Alabama Supreme Court found no authority in either section 12-15-70, Code 1975, or section 12-15-71(a)(5), Code 1975, which would allow such child care costs to be paid from state funds appropriated for the payment of court costs.
In McCain, supra, the supreme court did not say that Mental Health could not be required to pay the costs of such care, only that the costs could not be paid from that particular fund. In the case at bar there was no direction that the temporary child care costs be paid by Mental Health from a particular fund.
In the present case there was a motion filed in Houston County alleging neglect of the child while he was in Mental Health’s care and supervision. The Houston County Juvenile Court determined that legal custody of the child was to remain in Mental Health pending a final hearing. The boy was temporarily placed at Charter Woods pending such hearing.
Mental Health filed its application for the writ of prohibition before a hearing could be held to determine whether Mental Health was properly caring for, treating, and supervising the child. Moreover, no hearing has been held to determine whether Mental Health should be relieved of custody.
Since these matters are still pending, and since Mental Health still has legal custody, the costs of temporarily maintaining and treating the child can be assessed against Mental Health pursuant to section 12-15-9, Code 1975. Section 12-15-9 authorizes the juvenile court to require the custodian of a child to pay the costs of support and treatment of a child determined to be in need of such treatment. To minimize the costs of such temporary care, the juvenile court should proceed with all deliberate speed to a final determination of the merits of the case.
WRIT DENIED.
WRIGHT, P.J., and HOLMES, J., concur.